## People Savings Bank & Trust Company, Executor v. Renz, by, etc.

(Decided June 3, 1924.)

### Appeal from Kenton Circuit Court.

1. Limitation of Actions—Statute in Motion Not Arrested by Marriage.—Statute being set in motion was not arrested by subsequent marriage of debtor and creditor.

2. Executors and Administrators—Verdict Against Executor of Husband for Money Turned Over to Husband Held Not Palpably Against Evidence.—Verdict for committee of widow against husband's executor, for money claimed to have been turned over to husband to hold and invest for wife, held not palpably against evidence.

3. Executors and Administrators—Whether Wife Received Money Turned Over to Husband Held for Jury.—In action against husband's executor by widow's committee to recover money turned over to husband, whether widow had received or spent money, held for jury.

4. Husband and Wife—Husband Only Bound to Exercise Ordinary Care in Taking Care of Wife's Jewelry.—When wife became insane, it was eminently proper for husband to take charge of her jewelry and put it in a safety deposit box, and having done so he was only bound to exercise ordinary care, and was not liable for loss of jewelry along with his own property when bank moved

and contents of vault could not be found, though he received notice that boxes were to be transferred.

ROBERT C. SIMMONS and CHARLTON B. THOMPSON for appellant.

S. L. BLAKELY, JOHN H. KLETTE, and JOHN A. RICHMOND for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Affirming.

Edward Renz died in September, 1919, the owner of an estate worth about $16,000.00. By his will, which was duly probated, he devised his estate to a trustee to use the income, and as much of the principal as might be necessary, in taking care of his wife, Carrie Renz; what was left at her death was devised to certain of his own kindred. On September 10, 1918, Carrie Renz had been adjudged a person of unsound mind, and on September 24, 1919, John H. Richmond was appointed her committee. On April 20, 1920, this suit was brought by her committee against her husband's executor, in which she charged that Edward Renz in April, 1890, had qualified as the administrator *de bonis non* of F. R. Krueskamp, deceased, who had by his will left all his property to her and that as such administrator he had received $3,743.80, which he had failed to account for. She also alleged that she and Edward Renz were married in 1898 and that after their marriage they sold a house and lot belonging to her for $3,500.00 and that he received this money for her and had not paid it to her. She further alleged that after they were married certain articles of jewelry were delivered to him by her and accepted by him for the purpose of having the care, custody and control thereof, and for redelivery to her on her request; that the jewelry was of the value of $3,500.00, and that he had failed on request to deliver it. An answer was filed controverting the allegations of the petition and pleading limitation; proof was taken; the court held that the claim against Edward Renz, as administrator, was barred by limitation. This was admittedly correct, as the cause of action for this, if any, accrued many years before they were married and the statute being set in motion was not arrested by their subsequent marriage. The cause of action had accrued much more than twenty years before the suit was brought.

The court instructed the jury to peremptorily find for the defendant as to the jewelry. He submitted the

claim for $3,500.00 for the purchase money of the house to the jury. The jury found for the plaintiff as to this. The executor appeals from the judgment entered on the verdict and the plaintiff prosecutes a cross-appeal from the judgment denying her a recovery for the jewelry.

The house was sold in the year 1902. The purchaser said he paid for the house by check, payable to Carrie Renz, but the proof for the plaintiff by her two sisters and the husband of one of them, is clearly to the effect that Edward Renz at different times told them that he had received this money and was holding it for his wife and had it invested for her until he had fallen behind in a land transaction and had to use the money himself to meet some obligations unexpectedly falling upon him. We have read the record with care and cannot say that the verdict is palpably against the evidence. There is proof for the defendant to the effect that Mrs. Renz was wasteful of money, betting on the races and buying jewelry when her mind was not normal; although she was prudent and economical when her mind was all right. It is earnestly insisted that Mr. Edward Renz being dead and unable to explain, it should be presumed that she spent the $3,500.00 they got for the house, for jewelry or in betting on the races or in dresses; but there is no clear proof of these things and the testimony for the plaintiff shows that not very long before his death Renz admitted having used the money in his business. So this was a question for the jury on all the facts, and it is the policy of the law to settle such questions of fact by the verdict of the jury. The jury might well have found for the defendant, but their verdict cannot be disturbed in this court as palpably against the evidence. We do not see that there was any substantial error in the admission or rejection of evidence or in instructing the jury. The instructions fairly submitted the case to the jury and could not under the evidence have been misunderstood by them. The court did not err in peremptorily instructing the jury to find for the defendant as to the jewelry.

The proof shows that the wife was subject to mania and at times when her mind was wrong would have to be sent to an asylum. In one of these spells, some years before her death, when it was not safe for her to keep the jewelry at home, Renz took it down to the bank and locked it up in a safety box he kept there and in which he kept his own valuable papers. Some time after this, this bank consolidated with another and only removed to the

new location half of its safety boxes. Notice of the removal was sent out to all the patrons, who stood on the books of the bank as such. But on the books of the bank Renz's box was marked surrendered, and in fact no notice was sent to him. Some time after the box had been sent to the manufacturer Renz appeared at the bank with his key and wanted to go to his box and it was then found that his box had been sent away. Diligent inquiry was instituted to find the box or its contents; detectives were employed, but to no avail. Mrs. Renz's mind was still in bad condition and Renz knew it would distress her very much to know that the jewelry was lost. He talked with her two sisters and their husbands about the matter, telling them the facts, and after consulting them they decided that for fear of the bad effect upon his wife and her mental condition, it was best not to bring any suit against the bank or take any action that would give publicity to the matter. It is urged that he was negligent in not removing the jewelry from the bank before the boxes were removed, and one of the witnesses testifies that he said he had received notice of the removal but was busy and forgot about it. But the fact is that he treated his wife's property as he did his own, and his failure to sue the bank was due to his wife's infirmity and the bad effect it would have on her to learn that her jewelry, which she prized so highly, was lost. It was eminently proper that h should take charge of the jewelry under the circumstances and put it in a box in the bank. The subsequent loss of the jewelry was by reason of the unexpected removal of the box. He was not an insurer of the jewelry; he was only bound to exercise ordinary care; he thought he was taking care of it in the safest way that he could. This is perfectly apparent from all the testimony; he cannot now speak for himself, but the facts shown prove this.

It does not appear that a committee had been appointed for Carrie Renz when her husband took charge of this jewelry. The proof is clear that her condition at the time fully warranted his doing so. The evidence does not show that he had reason to know that there was danger of the property being lost. The notice that the boxes were to be transferred (as the sister says he admitted) was not notice that his property would be in danger. On all the facts he observed the care which a man of ordinary prudence may be expected to exercise under like circumstances. The loss occurred in this way. He

had two boxes in the bank. He surrendered one but did not surrender the other and by mistake the books of the bank did not show this.

The judgment is affirmed on the original and on the cross appeal.